**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-21035-RAR**

**JANE DOE (J.K.)**,

    Plaintiff,

v.

**CELEBRITY CRUISES, INC.**,

    Defendant.

_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court on Defendant Celebrity Cruises, Inc.'s ("Celebrity") Motion to Compel Arbitration ("Motion"), [ECF No. 9].  Plaintiff filed this action in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida on January 13, 2025.  *See generally* Compl., [ECF No. 1-2].  Defendant removed the case to this Court on March 3, 2025.  On March 12, 2025, Defendant filed the Motion.  Plaintiff filed a Response ("Response"), [ECF No. 17], and Defendant filed a Reply ("Reply"), [ECF No. 20].  Having carefully considered the Motion, the related briefing, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Compel Arbitration, [ECF No. 9], is **DENIED** as follows.

## BACKGROUND

This is a cruise ship sexual assault case.  Plaintiff Jane Doe, a citizen of the United Kingdom, was an employee of Defendant Celebrity Cruises, Inc.  *See* [ECF No. 1] ¶¶ 1, 2.  On October 31, 2023, Plaintiff was working aboard the *Celebrity Edge* as a sommelier.  *See* Compl. ¶ 13.  She concluded her shift by joining several other crewmembers at the staff bar.  *See id.*  She

had two drinks, but "does not recall very much after those drinks." *Id.* ¶ 15. "The Plaintiff's next memory was waking up in the Assailant crewmember's cabin with the Assailant on top of her sexually assaulting and/or raping the Plaintiff." *Id.* ¶ 16. She told him to stop twice and tried to push him away, but he continued to rape her. *Id.* ¶¶ 17–18. Plaintiff reported the assault to her supervisor and also reported it to the police at the ship's next port of call in Athens, Greece. *Id.* ¶¶ 20, 21.

Plaintiff brings seven counts: negligence under the Jones Act, 46 U.S.C. § 30104 (Count I); unseaworthiness (Count II); failure to provide maintenance and cure (Count III); vicarious liability (Count IV); sexual assault (Count V); intentional infliction of emotional distress (Count VI); and negligent infliction of emotional distress (Count VII). *See generally* Compl.

Defendant moves to compel arbitration pursuant to the arbitration provisions in Plaintiff's employment agreement ("Employment Agreement"). *See* Mot. at 1; *see also* Employment Agreement, [ECF No. 1-3]. The arbitration provisions in Plaintiff's Employment Agreement provide that "all grievances and any other disputes whatsoever . . . relating to or in any way connected with [Plaintiff's] service . . . shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on the Recognition and Enforcement of Foreign Arbitral Awards[]."[1] Employment Agreement at 3.

Plaintiff argues that the Motion should be denied because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–402, precludes enforcement of arbitration agreements in certain disputes involving sexual assault or sexual harassment.

---

[1] The Employment Agreement also incorporates by reference an identical provision from a Collective Bargaining Agreement ("CBA") between Defendant and an aggregate of seafarers' unions. *See* Employment Agreement at 2; *see also* CBA, [ECF No. 1-4], Art. 33, § 1–14.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). *See* 9 U.S.C. § 201. Under the FAA, the United States must give effect to private arbitration agreements made in other New York Convention signatory nations. *See Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015).

Pursuant to the New York Convention, the FAA provides that a district court "may direct that arbitration be held in accordance with [an arbitration] agreement. 9 U.S.C. § 206. The court must first conduct "a very limited inquiry" into whether the arbitration agreement meets four jurisdictional prerequisites: "(1) there is an agreement in writing within the meaning of the Convention"; "(2) the agreement provides for arbitration in the territory of a signatory of the Convention"; "(3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial"; and "(4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-95, n.7 (11th Cir. 2005).

The district court must compel arbitration "unless (1) the four jurisdictional prerequisites are not met or (2) one of the convention's affirmative defenses applies." *Id.* at 1294–95 (citations omitted). The FAA "generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998). "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration[.]" *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).

## ANALYSIS

Plaintiff argues that the arbitration provisions in her Employment Agreement (1) are exempt from the FAA, and (2) if not, are unenforceable under the EFAA.  The EFAA, enacted in 2022, amends the FAA to render unenforceable otherwise valid arbitration agreements where a party files a case under "Federal, Tribal, or State law" alleging "conduct constituting a sexual harassment dispute or sexual assault dispute" and the case "relates to the sexual assault dispute or the sexual harassment dispute."  9 U.S.C. § 402(a); *see also Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 530 (S.D.N.Y. Nov. 21, 2024) (explaining that the effect of the EFAA is to amend the FAA).  Defendant retorts that (1) the Court cannot decide whether the EFAA applies here because the threshold question of arbitrability is itself subject to arbitration under the Employment Agreement, and (2) Plaintiff's claims are not subject to the EFAA because Plaintiff does not plead a violation of a qualifying sexual assault statute.  The Court begins by addressing the applicability of the FAA before moving on to the EFAA.

### I.   The FAA Applies to Plaintiff's Claims

Before invoking the EFAA, Plaintiff first argues that the arbitration agreement is exempt from the FAA under 9 U.S.C. § 1.  *See* Resp. at 3.  Section 1 of the FAA provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  Plaintiff argues that this exemption extends to her arbitration agreement with Celebrity because she, as a cruise ship employee, is a seafarer under the FAA.  *See* Resp. at 9.

Plaintiff largely relies on *New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019), to support her position.  *See* Response at 8–11.  In *Oliveira*, the Supreme Court held that "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration," and that a domestic arbitration agreement between a truck driver and an interstate trucking

company fell within the scope of the exemption.  *Id.* at 109.  Plaintiff argues that under *Oliveira*, the seafarers' exemption extends to international arbitration agreements under the New York Convention because "the transportation worker exception under §[ ]1" is an "'integral part[ ] of a whole'" and therefore "applies through the entirety of" the FAA.  Resp. at 11 (citing *Oliveira*, 586 U.S. at 111 (citation omitted)).

This argument is misplaced because *Oliveira* does not extend to international arbitration agreements under the New York Convention.  *Oliveira*'s description of FAA provisions as "integral parts of a whole" refers only to 9 U.S.C. §§ 1–4—FAA provisions governing the enforceability of *domestic* arbitration agreements.  *See* 586 U.S. at 111.  Indeed, the Eleventh Circuit has held that § 1 is inapplicable to international arbitration agreements under the New York Convention.  As the Eleventh Circuit has explained, "[t]he FAA seamen exemption does not apply" to the New York Convention because "[t]he three chapters of Title 9 [ ] are not a seamless whole," and the § 1 seafarer exception conflicts with the New York Convention.  *Bautista*, 396 F.3d at 1289.  Section 1 carves out an exemption for certain commercial relationships, but the New York Convention "covers commercial legal relationships *without exception*."  *Id.* at 1299 (emphasis added).  This conflict renders § 1 inapplicable to international arbitration agreements under the New York Convention.  *Id.* at 1299.  Accordingly, the seafarers' exemption does not bar application of the FAA to Plaintiff's claims.[2]  *Id.* at 1300.

---

[2]  The Court further finds that Plaintiff's claims are subject to the FAA, as her Employment Agreement with Defendant satisfies the New York Convention's four jurisdictional prerequisites, which Plaintiff does not contest.  First, the arbitration provisions embedded in Plaintiff's Employment Agreement constitute an "agreement in writing" within the Convention's meaning.  *See* Employment Agreement at 3.  Second, the Employment Agreement provides for arbitration in the vessel's Flag State, and the *Celebrity Edge* flies the flag of Malta, a signatory to the New York Convention. *See* CBA at 28.  Third, this arbitration agreement arises out of a commercial relationship between Plaintiff and Defendant because it is a term of Plaintiff's employment contract. *See Bautista*, 396 F.3d at 1300.  Fourth, because Plaintiff is a citizen of the United Kingdom, at least one party to the agreement is not a United States citizen. *See* Employment Agreement at 1.

## II.   The Court May Decide Arbitrability

Defendant argues that the Court may not decide whether this case is arbitrable under the EFAA because Plaintiff's Employment Agreement delegates the initial question of arbitrability to an arbitrator.  Ordinarily, when an employment contract includes a clause containing "clear and unmistakable" evidence that the parties intended to delegate the gateway question of arbitrability to an arbitrator rather than a court, the court must submit the issue to arbitration.  *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (citation omitted).

However, the EFAA provides that the "applicability of [the EFAA] to an agreement to arbitrate . . . shall be determined by a court, rather than an arbitrator [ ] irrespective of whether the agreement purports to delegate such determinations to an arbitrator."  9 U.S.C. § 402(b).  Thus, the EFAA's plain text expressly provides that the Court *must* decide the threshold question of whether an agreement is arbitrable under the EFAA regardless of whether the arbitration agreement purports to delegate the question of arbitrability to an arbitrator.  *See Yost v. Everyrealm*, 657 F. Supp. 3d 563, 583 (S.D.N.Y. Feb. 24, 2023) (finding that, under the EFAA, the "threshold question" of arbitrability "is reserved for the Court").  Accordingly, the Court must decide whether the EFAA bars it from ordering arbitration.

## III.  The EFAA Precludes Arbitration of This Case

Defendant argues that Plaintiff's claims are not subject to the EFAA because they "[have] not triggered the statute's scope."  Mot. at 4.  In Defendant's view, a claim only "qualifies" for the EFAA's application when a plaintiff pleads a violation of a particular State, Federal, or Tribal law that "specifically prohibits sexual assault," so claims like Plaintiff's, which rest on factual allegations of sexual assault but do not plead a violation of a law such as Title VII or a state human rights statute, are not subject to the EFAA.  *See* Mot. at 13–16.  In Defendant's telling, it is the form of the claim, not the facts of the case, that trigger the EFAA's applicability.  The Court rejects

Defendant's interpretation of the EFAA because it reaches beyond the statute's plain meaning and hinges on interpretations of EFAA provisions that are inapplicable to this case.

The Court begins, as it must, with the plain meaning of the text. *See Boca Ciega Hotel, Inc. v. Bouchard Transportation*, 51 F.3d 235, 237 (11th Cir. 1995). The operative provision of the EFAA states that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).

The EFAA separately defines "sexual harassment dispute" and "sexual assault dispute." A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). A "sexual assault dispute" is "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent."[3] *Id.* § 401(3).

---

[3] Under 18 U.S.C. § 2246, a "sexual act" means:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to

The Court focuses on the EFAA's definition of "sexual assault dispute" because Plaintiff alleges that she was sexually assaulted, and all parties agree that whether the EFAA applies here hinges on this definition. *See* Compl. ¶¶ 16–18; Mot. at 13–16.  Therefore, putting together the EFAA's operative provision and its definition of "sexual assault dispute," the EFAA provides that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to," 9 U.S.C. § 402(a), "a dispute involving a nonconsensual sexual act or sexual contact as defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law," 9 U.S.C. § 401(3).

The Court first examines the statutory definition of "sexual assault dispute."  In order to have a "sexual assault dispute," there must be a "dispute."  9 U.S.C. § 401(3).  Congress's choice to define the EFAA's scope in terms of "*disputes* involving nonconsensual act[s] or sexual contact" rather than *claims* involving the same is telling here.  *Id.* (emphasis added).  These two terms carry different meanings.  A "dispute" denotes "a conflict or controversy, esp. one that has given rise to a particular lawsuit."  *Dispute*, BLACK'S LAW DICTIONARY (12th ed. 2024).  A "claim" is an "assertion of an existing right" or "a right to payment or to an equitable remedy."  *Claim*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Congress wrote the EFAA to apply when a plaintiff alleges a sexual assault *dispute*, not, as Defendant submits, when a plaintiff pleads a specific sexual assault *claim*, let alone a violation of a law explicitly prohibiting sexual assault.  In fact, the EFAA never makes use of the word "claim."  *See* 9 U.S.C. §§ 401–402.  While a dispute may eventually give rise to a claim, the

---

abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2).  "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]"  *Id.* § 2246(3).

relationship between the two terms is not one of logical necessity.  A dispute—a conflict or controversy—may exist where no one has asserted a right to relief, but for a claim to exist, a right must be asserted.  *See Memmer v. United Wholesale Mortgage, LLC*, 135 F.4th 398, 408 (6th Cir. 2025) (distinguishing between "claim" and "dispute" in assessing when a claim is said to accrue under the EFAA, and finding that the word "claim" refers only to the assertion of a right through a cause of action, whereas "dispute" refers to a controversy, which may or may not give rise to a cause of action); *cf. id.* at 416 (Thapar, J., dissenting) ("A 'dispute' is a 'conflict or controversy[ʼ.] . . . [T]he conflict or controversy is separate and apart from the formal legal demand to which it may give rise.  Disputes arise in the real world—something happens, and it generates conflict or disagreement.  In response, someone may sue and ask a judge to resolve the preexisting dispute.  The lawsuit doesn't create the dispute; the dispute creates the lawsuit.").  Indeed, it is the "standard rule" that a claim only accrues once a plaintiff can bring a "complete and present cause of action," that is, when "the plaintiff can file suit and obtain relief."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  No such framework governs the existence of disputes, which may pre-exist the institution of a lawsuit.  *Memmer*, 135 F.4th at 408.  Of course, for the EFAA to apply at all, the dispute must give rise to claims that are brought before a court.  But Congress requires courts to focus on the *dispute* at issue to determine the EFAA's applicability, not on the form of the *claims*.

The Court must presume that "Congress says what it means and means what it says." *United States v. Chineag*, 765 F. Supp. 3d 1283, 1301 (S.D. Fla. 2025) (citing *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 488 (11th Cir. 2015)).  Congress specifically chose to refer to disputes rather than claims in the EFAA, and there is no indication that Congress limited the applicability of the EFAA to claims brought under "qualifying statutes" that use magic words to summon the

EFAA's applicability. Accordingly, "there is nothing in the text of the EFAA that suggests its applicability rests on how a claim is labeled," *Delo v. Paul Taylor Dance Co.*, 685 F. Supp. 3d 173, 181 (S.D.N.Y. 2023), and the best explanation for why this is the case is "that Congress did not write the statute that way," *U.S. v. Naftalin*, 441 U.S. 768, 773 (1979).

Next, to qualify as a "sexual assault dispute," the dispute at issue must be one "involving a nonconsensual sexual act or sexual contact as defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law." 9 U.S.C. § 401(3). Again, nothing about this language suggests that Congress limited the EFAA's applicability to cases where the plaintiff pleads a violation of law that specifically prohibits sexual assault. The plain meaning of "involve" is "to have within or as part of oneself," to "include," or "to relate closely" to something. *See Involve*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/involve (last visited July 21, 2025). Thus, the only relatedness requirement § 401(3) imposes is that a sexual harassment dispute must *include* or *relate to* nonconsensual sexual acts or contact "as such terms are defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law." *See Allied-Bruce Terminix Co. Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995) (holding that the phrase "involving commerce" as used in the FAA is a broadening term, the functional equivalent of "affecting commerce," a phrase used to indicate Congress's intent to regulate to the outer edges of its commerce power).

Defendant argues that the reference to 18 U.S.C. § 2246 or similar applicable Tribal or State law is "a legal limitation, requiring plaintiffs to assert that the conduct they describe actually violates a specific statute or Tribal or state law." Mot. at 15. But § 2246 cannot be violated because it is a purely definitional provision and does not proscribe any conduct. It merely *describes* conduct constituting a "sexual act" or "sexual contact" within the federal criminal code. The definition of "sexual assault dispute," then, requires only that the "dispute" at issue includes or relates to conduct that meets the definition of "sexual act" or "sexual contact" as set out in

§ 2246 or similar definitions in Tribal or State law—not that the plaintiff must "assert that the conduct they describe actually violates a specific statute or Tribal or state law." Mot. at 15.

The text of the EFAA's operative provision further strengthens the conclusion that the EFAA's applicability to sexual assault disputes hinges on the facts alleged, not the claims pleaded. In order to trigger the EFAA's bar on arbitration, a case must (1) "allege[e] conduct constituting a sexual assault or sexual harassment dispute," (2) be "filed under Federal, Tribal, or State law," and (3) "relate[ ] to the sexual assault or sexual harassment dispute." 9 U.S.C. § 402(a).

First, the EFFA's use of the phrase "allege conduct constituting a sexual assault or sexual harassment dispute," makes clear that a sexual assault dispute is formed by facts, not claims. *Id.* "Conduct" means "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds." *Conduct*, BLACK'S LAW DICTIONARY (12th ed. 2024); *accord Conduct*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/conduct (last visited July 21, 2025) (defining conduct as "the act, manner, or process of carrying on"). And to "constitute" means "[t]o make up or form." *Constitute*, BLACK'S LAW DICTIONARY (12th ed. 2024); *accord Constitute*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/constitute (last visited July 21, 2025) (defining constitute as to "make up, form, [or] compose"). So, under the EFAA, a sexual assault dispute is *made up* or *formed* by allegations of *behavior* or *deeds*, not the cause of action. It is the *conduct* that makes the claims subject to the EFAA, not the other way around.

Second, the case must be "filed under Federal, Tribal, or State law." 9 U.S.C. § 402(a). Here, it is what Congress left out that is significant. *See Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant."). In providing that the case must be "filed under" some "Federal, Tribal, or State law,"

nowhere does Congress mention that such law must be one "prohibiting sexual assault." Mot. at 15. Neither does the definition of "sexual assault dispute" in § 401(3) condition the EFAA's applicability on a claim that the defendant violated a particular sexual assault law, as previously discussed. If Congress had intended to limit the EFAA's applicability to violations of statutes explicitly prohibiting sexual assault, "it could have easily said so." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 705 (2022) (rejecting a proposed alternative reading to a statute that Congress could have easily adopted if it wanted to). Here, it did not. The Court is therefore unwilling to read Defendant's atextual amendment into the statute.

Lastly, the "case" must "relate[ ] to the sexual assault . . . dispute." 9 U.S.C. § 402(a). In this phrase, the "case" is something separate and apart from the sexual assault dispute underlying it. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (observing that the ordinary meaning of the phrase "relating to" is "a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'") (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979))). Indeed, if "sexual assault dispute" meant an alleged violation of a particular law prohibiting sexual assault, this requirement would be superfluous. The "case" would always "relate[ ] to" the sexual assault dispute when the plaintiff alleges a violation of a particular law prohibiting sexual assault. Defendant's reading of the EFAA therefore runs afoul of the familiar principle that courts must give effect to "every word and every provision" of a statute, and should avoid "an interpretation that causes it to duplicate another provision or to have no consequence," particularly where a competing interpretation gives full effect to every word in the statute. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW app. B at 440 (2012); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385, 386 (2013) (explaining that the canon against surplusage applies "where a competing interpretation gives effect to every

clause and word of a statute" and "is strongest when an interpretation would render superfluous another part of the same statutory scheme" (citation modified)).

The text, therefore, points uniformly in one direction: the EFAA demands its application to any case where the facts alleged constitute a sexual assault dispute under the EFAA and the sexual assault dispute relates to the case, irrespective of whether a plaintiff labels her claims as sexual assault claims or brings them under a particular statute. Last month, another court in this District came to precisely the same conclusion in a case presenting almost identical facts as this action. *See Bulic v. Celebrity Cruises, Inc.*, No. 25-21231, 2025 WL 1783865 (S.D. Fla. Jun. 27, 2025). In *Bulic*, the plaintiff, a cruise-ship employee, brought claims of Jones Act negligence and unseaworthiness against her employer, Celebrity, after she was sexually assaulted by her ship's restaurant manager. *See id.* at *1. Celebrity moved to compel arbitration pursuant to provisions in the plaintiff's employment agreement (identical to the arbitration provisions at issue here), and the plaintiff invoked the EFAA as a bar to arbitration because her claims arose from a sexual assault. *See id.* The court denied Celebrity's motion, finding that the EFAA precluded arbitration of the plaintiff's case because she alleged a sexual assault dispute, triggering the statute's scope even though she did not plead a violation of a particular law "prohibiting sexual assault." *Id.* at *4. The court reasoned that application of the EFAA's sexual assault prong depends on the "nature of the conduct rather than the legal theory invoked," because the statute ties itself to "disputes involv[ing] a nonconsensual sexual act or sexual conduct" rather than any particular cause of action. *Id.*

Resisting this conclusion, Defendant cites a line of cases under the EFAA's sexual harassment prong limiting the EFAA's scope to alleged violations of statutes that explicitly prohibit sexual harassment. *See* Mot. at 13–16. Specifically, Defendant cites *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 584–85 (S.D.N.Y. 2023), which found that 9 U.S.C. § 401(4)— defining

the term "sexual harassment dispute"—requires plaintiffs to assert a violation of a particular State, Federal, or Tribal law prohibiting sexual harassment in order for the EFAA to apply. Section 401(4) defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." The *Yost* court concluded that § 401(4)'s use of the phrase "to constitute sexual harassment under applicable Federal, Tribal, or State law" modifies the word "alleged," imbuing it with "a legal dimension," namely, the requirement that a plaintiff allege a *violation* of a Federal, Tribal, or State *law* that *proscribes* sexual harassment. *Id.* This reasoning has been adopted by several other district courts across the country interpreting the EFAA's "sexual harassment" prong. *See, e.g.*, *Mitchell v. Raymond James and Assocs., Inc.*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4486565, at *6 (M.D. Fla. Aug. 23, 2024); *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535 (S.D.N.Y. Feb. 24, 2023); *Gonzalez v. Carnival Corp*, 757 F. Supp. 3d 1314 (S.D. Fla. 2024); *K.T. v. A Place for Rover*, No. CV-23-02858, 2023 WL 7167580, at *4 (E.D. Pa. Oct. 31, 2023).

The Court does not find these authorities persuasive. As an initial matter, none of these cases are binding on the Court. *See Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case." (citations omitted)). But even if these authorities were binding, they are inapposite.

All the cases Defendant cites for support interpret the EFAA's definition of the term "sexual harassment dispute" under § 401(4), not "sexual assault dispute" under § 401(3). The differences between the two definitions are salient here. *Yost* and its progeny focus on § 401(4)'s use of the phrase "alleged to constitute sexual harassment under applicable Federal, Tribal, or State law" to support the conclusion that a plaintiff must "allege" a violation of a Federal, Tribal, or State "law" that proscribes "sexual harassment." But the word "alleged" is absent entirely from

§ 401(3), as is the modifying phrase—"to constitute sexual harassment under applicable Federal, Tribal, or State law"—on which *Yost* pins its analysis.  Section 401(3) requires only a "dispute *involving* a nonconsensual sexual act or sexual contact."  9 U.S.C. § 401(3) (emphasis added). Defendant provides no basis for extending *Yost*'s interpretation of § 401(4) (sexual harassment disputes) to § 401(3) (sexual assault disputes).  *Yost*'s reasoning does not extend to sexual assault disputes under the EFAA, so it does not apply to the instant case, in which Plaintiff alleges only sexual assault.[4]  *See Bulic*, 2025 WL 1783865, at *4.  Moreover, no ambiguity exists within the EFAA that would justify such a stretch beyond the statute's plain meaning.  *See Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1161 (11th Cir. 2019) ("We look beyond the plain language of a statute only if applying the statute in accordance with the plain language would lead to an absurd result.").

Accordingly, the Court finds that the text of the EFAA demands its application to any case where the facts alleged constitute a sexual assault dispute under the EFAA and the sexual assault dispute relates to the case, irrespective of whether a plaintiff labels her claims as sexual assault claims or brings them under a particular statute.  The Court has little trouble concluding that Plaintiff's action relates to a sexual assault dispute within the meaning of the EFAA.  Plaintiff experienced nonconsensual sexual contact within the scope of 18 U.S.C. § 2246 when she was raped by Defendant's employee.  Because the case she brings relates to a dispute involving those

---

[4]  The Court notes that it would be highly unusual if Congress imposed different standards for determining the applicability of the EFAA for sexual harassment disputes and sexual assault disputes.  The Court therefore has its doubts that the sexual harassment prong of the EFAA requires a plaintiff to allege a violation of a qualifying sexual harassment statute under Federal, Tribal, or State law.  However, that question is not before the Court.

factual allegations, her case is a sexual assault dispute as defined under the EFAA.[5] *See* Compl.

¶¶ 16–18.  Because the EFAA applies to Plaintiff's case, the Court cannot compel arbitration.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's

Motion to Compel Arbitration, [ECF No. 9], is **DENIED**.  Defendant shall file an answer to

Plaintiff's Complaint, [ECF No. 1-2], on or before **August 4, 2025**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of July, 2025.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[5] Defendant contends that even if Plaintiff is found to allege a sexual assault dispute within the EFAA's scope, her claim for failure to provide maintenance and cure (Count III) should be separated from the rest of the case and submitted to arbitration because it is insufficiently related to the alleged sexual assault dispute to trigger the EFAA.  However, the text of the EFAA clearly states that when the statute renders an arbitration agreement unenforceable, it does so "with respect to a case," not with respect to individual claims.  9 U.S.C. § 402(a); *see also Johnson*, 657 F. Supp. 3d at 559 (finding that the EFAA's use of the term "'case' . . . captures the legal proceeding as an undivided whole and "does not differentiate among causes of action within it").  Accordingly, the Court finds that the EFAA bars arbitration of this case in its entirety—not with respect to any particular claim.